# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BUTTE DIVISION

| | |
|---|---|
| JANE DOE NO. 2,<br><br>                              Plaintiff,<br><br>v.<br><br>MONTANA STATE UNIVERSITY,<br><br>                              Defendant. | No. CV-20-12-BU-SEH<br><br>**MEMORANDUM AND ORDER** |

## INTRODUCTION

Pending before the Court is Defendant's Motion to Dismiss Claim 2.[1] Grounds asserted for the motion are: (1) Plaintiff's disparate impact theory in Claim 2 "is not cognizable under Title IX;"[2] and (2) Claim 2 "is unsupported by any factual content to plausibly suggest [Montana State University's ("MSU")] alleged policies or customs—all of which are gender neutral on their face—

---

[1] Doc. 3.

[2] Doc. 4 at 2.

amounted to intentional gender discrimination."[3] Plaintiff responded on April 16, 2020.[4] Defendant replied on April 30, 2020.[5] A hearing on the motion was held on June 2, 2020.

## BACKGROUND

The Complaint and Demand for Jury Trial asserts two claims: (1) "Sex Discrimination under Title IX of the Education Amendments 1972, 20 U.S.C. §§ 1681-88 – Sexual Harassment/Assault, Deliberate Indifference;"[6] and (2) "Sex Discrimination under Title IX of the Education Amendments 1972, 20 U.S.C. §§ 1681-88 – Official Policy/Custom of Discrimination."[7] Plaintiff requests, *inter alia*, a declaration "that Defendant's acts and conduct constitute violations of federal law"[8] and "a permanent injunction requiring MSU to comply with its Title IX obligations."[9]

---

[3] Doc. 4 at 2.

[4] *See* Doc. 5.

[5] *See* Doc. 6.

[6] Doc. 1 at 13.

[7] Doc. 1 at 16.

[8] Doc. 1 at 21.

[9] Doc. 1 at 21.

Plaintiff asserts she was raped by "Student B" on February 18, 2017,[10] and that the day after the alleged rape, a "Residence Life" employee reported to the Office of Institutional Equity ("OIE") that Plaintiff "may have been sexually assaulted."[11] "The case was referred to the Bozeman Police Department, but [Plaintiff] advised that she did not wish to proceed with a formal prosecution."[12] On March 14, 2017, after not hearing from Plaintiff, the OIE closed the case.[13] Plaintiff later met with an OIE employee in August 2017, and "expressed reluctance to go forward with a formal complaint."[14]

In November 2017, "[Plaintiff] requested that the formal OIE process go forward."[15] On May 10, 2018, the OIE concluded its investigation.[16] It issued a Report of Finding on July 27, 2018.[17] The report contained the determination that there was "insufficient information to show that sexual activity occurred which

---

[10] *See* Doc. 1 at 6.

[11] Doc. 1 at 9.

[12] Doc. 1 at 9.

[13] *See* Doc. 1 at 9.

[14] Doc. 1 at 10.

[15] Doc. 1 at 10.

[16] *See* Doc. 1 at 10.

[17] *See* Doc. 1 at 11.

would violate MSU's Policy."[18] The report, however, concluded that "Student B committed 'sexual exploitation/coercion.'"[19]

Claim 2 of the Complaint, "Sex Discrimination under Title IX of the Education Amendments 1972, 20 U.S.C. §§ 1681-88 – Official Policy/Custom of Discrimination" asserts, in part:

> [I]t is apparent that MSU has an official policy and/or custom of underfunding, understaffing, and/or inadequately training the OIE, of deprioritizing cases involving the most severe forms of denial of access to educational opportunities or benefits provided by the school, and of imposing an unreasonably high burden of proof on alleged victims of sexual assault.
>
> MSU engaged in a pattern and practice of behavior designed to discourage and dissuade students and guest students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults fully investigated.
>
> . . . .
>
> MSU knew in allocating resources and implementing policies regarding the OIE and Title IX compliance that these decisions would have disparate impacts on women and proceeded to deliberately underfund the OIE with the knowledge and intent that women would be harmed by the decision.
>
> These policies and/or customs constitute intentional discriminatory treatment of females and have had a

---

[18] Doc. 1 at 12.

[19] Doc. 1 at 12.

discriminatory and disparate impact on female students. It can reasonably be inferred from MSU's conduct that gender is a substantial or motivating factor behind MSU's discriminatory policies and/or customs described herein.[20]

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint.[21] To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[22] A facially plausible complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] In considering the motion, a court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."[24] However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."[25]

---

[20] Doc. 1 at ¶¶ 72–73, 78–79.

[21] *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[23] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[24] *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)).

[25] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994)).

## DISCUSSION

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* states, in part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[26] "Title IX is [ ] enforceable through an implied private right of action . . . ."[27] Claim 2 as asserted in the Complaint alleges MSU's policies or customs have had a "disparate impact on female students" and "constitute intentional discriminatory treatment of females."[28]

### A.      Disparate impact

Defendant argues: Title IX claims may not be based on a disparate impact theory;[29] that "there must be factual matter separate and apart from disparate impact that plausibly alleges intentional gender discrimination;"[30] and that "[c]ourts that have considered the question have uniformly held [*Alexander v.*

---

[26] 20 U.S.C. § 1681(a).

[27] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979)).

[28] Doc. 1 at 19.

[29] *See* Doc. 4 at 6 (citing *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Save Our Valley v. Sound Transit*, 335 F.3d 932, 934 (9th Cir. 2003)).

[30] Doc. 4 at 7.

6

*Sandoval's*] prohibition against disparate impact claims in Title VI cases applies equally to Title IX cases."[31] Defendant also asserts that "since *Sandoval*, courts have routinely dismissed official policy claims based on disparate impact for the failure to plausibly plead discriminatory intent under Rule 12(b)(6)."[32]

In response, Plaintiff argues that "disparate impact 'alone is not determinative, and the Court must look to other evidence'"[33] supporting the claim, that "it is reasonable to infer that MSU knew its decisions would disproportionately harm women,"[34] and that "it intentionally and knowingly proceeded with that course of action knowing women would suffer."[35] Plaintiff also argues "disparate impact allegations of this nature are probative of discriminatory intent and, at least when combined with the additional evidence [ ], give rise to an inference of such intent under the *Twombly* and *Iqbal* standards."[36]

---

[31] Doc. 4 at 6–7 (citing *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448 (S.D.N.Y 2015); *Weser v. Glen*, 190 F. Supp. 2d 384, 395 (E.D.N.Y 2002)).

[32] Doc. 4 at 7 (citing *Jackson v. Cleveland Clinic Found.*, 2011 U.S. Dist. LEXIS 101768, at *1 (N.D. Ohio Sep. 9, 2011)).

[33] Doc. 5 at 15 (quoting *Arlington Heights v. Metro. Hous. Corp.*, 429 U.S. 252, 265 (1977)).

[34] Doc. 5 at 16.

[35] Doc. 5 at 16.

[36] Doc. 5 at 18.

In reply, Defendant maintains "[Plaintiff] fails to cite a <u>single</u> case in which an official policy claim was allowed to proceed under Rule 12 absent factual allegations of discriminatory intent."[37] Plaintiff does not dispute Defendant's assertion that Title IX claims may not be based solely on a disparate impact theory. Rather, she argues that the disparate impact MSU's policies or customs have on female students supports an inference of intentional discrimination.[38]

The Sixth Circuit has "conclude[d] that compensatory damages under Title IX are available when a facially neutral policy is challenged only if an intentional violation is shown."[39] The Seventh Circuit has adopted a similar standard that "disparate impact alone is not sufficient to establish a violation" in the Title IX context.[40] The Ninth Circuit has not addressed the issue.

This Court concludes that Claim 2 cannot survive Defendant's motion to dismiss based solely on a disparate impact theory. In order to survive, such a claim must be pled with sufficient factual allegations that MSU's official policies or customs were intentionally discriminatory against female students.

/ / /

/ / /

---

[37] Doc. 6 at 7.

[38] *See* Doc. 5 at 18.

[39] *Horner v. Ky. High Sch. Athletic Ass'n*, 206 F.3d 685, 692 (6th Cir. 2000).

[40] *Cannon v. Univ. of Chi.*, 648 F.2d 1104, 1109 (7th Cir. 1981).

8

## B. Intentional discrimination

Defendant asserts, and the Court agrees, that Claim 2 is based upon four alleged policies or customs at MSU: (1) underfunding, understaffing, and inadequately training the OIE;[41] (2) deprioritizing sex cases;[42] (3) imposing an unreasonably high burden of proof on alleged victims of sexual assault;[43] and (4) discouraging and dissuading sexual assault victims from seeking prosecution and protection.[44] Defendant further argues that there are no factual allegations to plausibly suggest these alleged policies were the product of an intent to discriminate based on sex.[45]

In response, Plaintiff asserts "[g]iven the disparate impact [the] OIE's functions have with respect to women, it is reasonable to infer that gender was a 'motivating factor' in the decision"[46] to "deprive [the] OIE of the resources it needs."[47] Plaintiff also maintains that MSU's policy of prioritizing active student

---

[41] *See* Doc. 4 at 8.

[42] *See* Doc. 4 at 10.

[43] *See* Doc. 4 at 11.

[44] *See* Doc. 4 at 11.

[45] *See* Doc. 4 at 8–12.

[46] Doc. 5 at 17 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994)).

[47] Doc. 5 at 17.

9

sexual assault investigations over inactive student investigations "shows that MSU has acted in conscious disregard of its most basic duty to prevent women from being excluded from participation in MSU's educational program on the basis of sex."[48]

Plaintiff further argues MSU's imposition of "an unreasonably high burden of proof on victims of sexual violence, [by] regularly conclud[ing] no rape occurred despite overwhelming evidence . . . give[s] rise to a reasonable inference that MSU intentionally discriminates against women."[49] Moreover, Plaintiff claims that a discriminatory intent pleading requirement violates Ninth Circuit precedent.[50]

Here, Plaintiff has not pleaded sufficient factual content in Claim 2 to permit the Court to draw a reasonable inference that MSU's alleged official policies or customs were intentionally discriminatory against female students, in violation of Title IX.[51] Claim 2, as pleaded, fails.

---

[48] Doc. 5 at 28.

[49] Doc. 5 at 27.

[50] *See* Doc. 5 at 29–30 (citing *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998); *Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1229 (C.D. Cal. 1998); *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1336 (W.D. Wash. 1998)).

[51] *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Even if Plaintiff's allegation that "[w]omen are disproportionately victimized by sexual misconduct, sexual harassment, and sexual assault"[52] is taken as true, Claim 2 does not plausibly suggest that these alleged policies or customs were intentionally discriminatory against female students. Plaintiff has not adequately pleaded that MSU's alleged policy of "underfunding, understaffing, and/or inadequately training the OIE" was intentionally discriminatory against female students. The OIE investigates alleged violations of the Code of Student Conduct at MSU, regardless of the sex of alleged victims. Plaintiff's argument that MSU "proceeded to deliberately underfund the OIE with the knowledge and intent that women would be harmed by the decision"[53] is not plausible.

Plaintiff likewise has not adequately pleaded that MSU's alleged policy "of deprioritizing cases involving the most severe forms of denial of access to educational opportunities or benefits provided by the school" is intentionally discriminatory against female students. The Court cannot reasonably infer that the policy of prioritizing cases with active students over those including former students who have withdrawn from MSU is intentionally discriminatory against female students. Even if this policy could be said to have a disparate impact on women, it does not plausibly suggest intentional discrimination.

---

[52] Doc. 1 at 19 (citing *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1225 (D. Or. 2016)).

[53] Doc. 1 at 19.

Moreover, Plaintiff has not adequately pleaded that MSU's alleged policies

or customs of "imposing an unreasonably high burden of proof on alleged victims

of sexual assault" and "discourag[ing] and dissuad[ing] students and guest students

who had been sexually assaulted from seeking prosecution and protection" are

intentionally discriminatory against female students. Although women may be

more likely than men to be the victims of sexual assault, such allegations lack

factual support of intentional discrimination meeting the pleading requirements of

*Iqbal*[54] and *Twombly.*[55]

ORDERED:

1.      Defendant's Motion to Dismiss Claim 2[56] is GRANTED.

2.      Claim 2, "Sex Discrimination under Title IX of the Education

Amendments 1972, 20 U.S.C. §§ 1681-88 – Official Policy/Custom of

Discrimination" is DISMISSED WITH PREJUDICE. Claim 2 in the instant case is

nearly identical to Claim 2 in related case *Jane Doe No. 1 v. Montana State

University*, No. CV-19-54-BU-SEH, which the Court has dismissed with prejudice

---

[54] 556 U.S. 662.

[55] 550 U.S. 544.

[56] Doc. 3.

12

after according Plaintiff an opportunity to amend. An additional amendment of the Complaint would be futile.[57]

3.      Defendant shall file an answer to the remaining claim in the Complaint on or before July 2, 2020.

DATED this **24th** day of June, 2020.



                                        *Sam E Haddon*
                                        SAM E. HADDON
                                        United States District Judge

---

[57] *See Klarfeld v. United States*, 944 F.2d 583, 586 (9th Cir. 1991) (citation omitted) ("[A] district court does not err in denying leave to amend where the amendment would be futile.").